UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JULIE KASSERA,                                                    Case No. 07-CV-2292 (PJS/JJG)

        Plaintiff,

v.                                                                                ORDER

INDEPENDENT SCHOOL DISTRICT
NO. 11,

        Defendant.

---

      Stephen M. Thompson and Tammy P. Friederichs, FRIEDERICHS & THOMPSON, PA, for plaintiff.

      Christopher Harristhal and Julia H. Halbach, LARKIN HOFFMAN DALY & LINDGREN LTD., for defendant.

      Plaintiff Julie Kassera contends that defendant Independent School District No. 11 ("District 11") harassed and constructively discharged her because of her age and because she protested discrimination against minority students. District 11 moves for summary judgment. For the reasons that follow, the Court grants summary judgment to District 11 on all of Kassera's claims.

I.  BACKGROUND[1]

      Kassera worked for District 11 (also known as the Anoka-Hennepin School District) in various capacities from 1998 or 1999 through June 2006. In 2001, she became a paraeducator

---

[1]Because District 11 moves for summary judgment, the Court recounts the facts in the light most favorable to Kassera.

("para") in District 11's special-education program. Paras provide individual assistance to students.

In 2003, Kassera was hired as a para in the English as a Second Language ("ESL") department at Champlin Park High School ("Champlin Park"). Kassera was hired by Ann Ertl, the head of the ESL department, and Steve Hall, an assistant principal at the school. Ertl Dep. at 21-22.[2]

Kassera enjoyed working with students as an ESL para, but she was not happy with how she was treated by ESL teachers and school officials. Kassera Dep. at 93-95. In early 2006, Kassera shared her concerns with Ertl and with Heather Fremont, a fellow para and the designated "para representative" at Champlin Park. Fremont's duties as para representative included voicing the paras' concerns to school administrators. Kassera Dep. at 61.

In February 2006, Kassera arranged a meeting with Hall, Ertl, and Fremont to further discuss her concerns. Kassera told them that she felt she "was being targeted and harassed and being singled out and followed and questioned and harassed . . . ." Kassera Dep. at 71. Kassera thought that the meeting went well. *Id.* at 72 ("[I]t ended in a positive note, I thought."). After the meeting, Hall sent an email to the teachers at Champlin Park conveying Kassera's concerns. *Id.*; Hall Dep. at 35-36.

Over the next few months, Kassera continued to feel that she was being treated unfairly by Ertl and other ESL teachers. Kassera also told someone who worked on "multi-cultural"

---

[2] Kassera and District 11 have each submitted partially overlapping portions of the deposition transcripts of Ertl, Kassera, and Hall. Harristhal Aff. Exs. D (Ertl Dep.), B-C (Kassera Dep.), E (Hall Dep.); Pl. Exs. 1 (Ertl Dep.), 5 (Kassera Dep.), 4 (Hall Dep.) [Docket No. 34]. The Court cites the relevant pages of each deposition transcript without distinguishing whether those pages are found in Kassera's or District 11's exhibits.

issues for Champlin Park that students were being mistreated and that she "was advocating for them." Kassera Dep. at 36-37.

Toward the end of the 2005-2006 school year, Kassera took several days off and then returned to work on Monday, June 5. Kassera Dep. at 118-21. Some time on June 5 or June 6, Kassera sent Hall an email saying that she thought several students were being mistreated by the ESL teachers. *Id.* at 66-68; Harristhal Aff. Ex. S. Kassera also met with Hall, Ertl, and Fremont in person on June 6 and told them that students were being mistreated.[3] Kassera Dep. at 63. Hall responded that Kassera had "overstepped [her] bounds." *Id.*

Later in the day on June 6, Hall sent Kassera a brief email asking her to attend a meeting the next day with him, Ertl, Fremont, and a member of District 11's human-resources department. Harristhal Aff. Ex. I. With respect to the meeting's purpose, Hall wrote: "We will be addressing performance concerns and deciding where we should go from here." *Id.*

Kassera construed Hall's email as a threat to fire her. Kassera Dep. at 62. Kassera decided to resign because she felt that she was being unfairly criticized and disciplined. *Id.* at 54. Late in the evening on June 6, she resigned by sending a lengthy email to Champlin Park's principal. Harristhal Aff. Ex. J. In that email, Kassera said that various students in the ESL program had been mistreated. She also said that she felt "singled out" by the ESL department. *Id.*

Because she had resigned the night before, Kassera did not show up for the June 7 meeting scheduled by Hall. In October 2006, she filed a discrimination complaint with the Equal

---

[3]It is not clear whether Kassera met with Hall, Ertl, and Fremont all at once or instead met with each separately, but it makes no difference to the outcome of this case.

Employment Opportunity Commission, which declined to bring charges.  Kassera then brought this action.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party.  *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006).  In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party."  *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B.  ADEA Claims

Kassera contends that District 11 discriminated against her because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34.  There is no dispute that Kassera was over forty years old at the relevant time and therefore was protected by the ADEA.  *See* 29 U.S.C. § 631(a).  To prevail on her ADEA claim, though, Kassera must establish that District 11 intentionally discriminated against her with respect to the "compensation, terms, conditions, or privileges of [her] employment" because of her age.  29 U.S.C. § 623(a)(1).  In other words, Kassera must establish that she suffered "adverse

employment action," and that District 11 took that adverse action because of Kassera's age (and not because of some other reason). *See Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005); *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996).

In ADEA cases, as in other employment-discrimination cases, plaintiffs may establish discrimination by two methods of proof, the direct method and the indirect method. *See Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007); *Darke v. Lurie Besikof Lapidus & Co.*, 550 F. Supp. 2d 1032, 1040-41 (D. Minn. 2008). When a plaintiff has strong evidence of discrimination — such as an admission by a decisionmaker that he or she acted on a forbidden basis — the plaintiff simply submits her evidence to the factfinder. *Darke*, 550 F. Supp. 2d at 1040. When a plaintiff does not have strong evidence — when she instead has attenuated or "indirect" evidence of intentional discrimination — then the plaintiff may rely on the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Under both methods, however, an essential element of the plaintiff's case is an adverse employment action by the defendant. *See* 29 U.S.C. § 623(a)(1); *Baucom*, 428 F.3d at 767; *Rothmeier*, 85 F.3d at 1336-37. If the defendant did not take an adverse employment action, then the plaintiff cannot recover, and the question of the defendant's intent is irrelevant. Because no reasonable jury could find that District 11 subjected Kassera to an adverse employment action, Kassera cannot recover from District 11 under the ADEA, and thus the Court need not decide whether the direct or indirect method of proof applies to proving District 11's intent.

Kassera contends that District 11's treatment of her was so bad that it amounted to a constructive discharge. Pl. Mem. Opp. Def. Mot. S.J. at 17-19 [Docket No. 33]. A constructive

discharge, if proved, qualifies as an adverse employment action. *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999). A constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable and either intends to force the employee to quit, or should reasonably foresee that the employee will quit. *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 732 (8th Cir. 1996).

Whether working conditions are intolerable is judged by an objective standard. *Id.* The key question is not whether the *particular employee* found her working conditions intolerable. Rather, the key question is whether a *reasonable person* in the employee's situation would have found the same conditions intolerable. *Id.* It follows that "[a]n employee may not be unreasonably sensitive to his working environment." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981).

Kassera testified in no uncertain terms that, subjectively, she found her working conditions intolerable. She said: "I was targeted. I was harassed. I was followed. I was belittled. I was — it just was so intolerable, I couldn't take it. I was singled out. I was targeted." Kassera Dep. at 33. Kassera's testimony was less clear as to when the intolerable conditions began. When asked how long her working conditions had been intolerable, she said that June 2006 was when she felt targeted and that she felt "[a] little bit" targeted before June 2006. *Id.* at 92-93. But she later said that "for the most part, it was intolerable" from February through June 2006. *Id.* at 95.

Because constructive-discharge claims must be judged by an objective standard, however, even if Kassera subjectively felt targeted and harassed from February 2006 onward, those

feelings alone are insufficient to defeat summary judgment. The Court therefore focuses on the specific instances of objectionable behavior by District 11 personnel identified by Kassera.

According to Kassera, Ertl spoke to Kassera and other older paras "in a belittling or rude way . . . ." Kassera Dep. at 110. In particular, Ertl used a different tone of voice in speaking with Kassera and other older paras. *Id.* ("[I]f . . . I asked [Ertl] a question, it would be, 'I don't know.' If the . . . other two paras asked a question, it would just be, 'I don't know.' It was the tones that she used towards us versus —."). And at the end of the 2004-2005 school year, Ertl put some of Kassera's personal belongings in the trash in the course of cleaning up a classroom. Kassera Dep. at 40; Ertl Dep. at 48-49.

When Kassera used school computers, Ertl sometimes asked what she was doing, and Kassera took such questions as criticism. Kassera Dep. at 82, 112. Ertl asked Kassera what lunch periods she was going to and generally asked her about her whereabouts. *Id.* at 112. Whenever Kassera came into Ertl's office, Ertl would look at the clock. *Id.* at 133. Ertl also called a classroom once to find out if Kassera was there. *Id.*

Further, Ertl admits that she monitored Kassera's attendance and conduct at Hall's request, and Ertl wrote down her observations in a list. Ertl Dep. at 70-71; Harristhal Aff. Ex. F. The list contains two entries related to training in 2005, one entry about the February 2006 meeting with Kassera, Hall, and Fremont, and many entries dated in April and May 2006. The entries generally confirm that Ertl was monitoring Kassera's attendance, whereabouts, computer usage, and other aspects of Kassera's performance.

In addition to Ertl, another ESL teacher, Sue Oltman, paid close attention to Kassera's whereabouts. On roughly four occasions, Oltman encountered Kassera making copies and said,

"Oh, here you are," which Kassera took to mean that Oltman had been looking for her. Kassera Dep. at 131-32. On at least one occasion in late May 2006, Ertl sent Oltman to look for Kassera, and Oltman found her in the cafeteria. Harristhal Aff. Ex. F at ISD-000151.

The worst incident, however, according to Kassera, happened on June 6, when Hall told Kassera that she had "overstepped [her] bounds." *Id.* at 54. Kassera felt that this comment amounted to retaliation for standing up for the rights of ESL students. *Id.* at 94.

These incidents demonstrate, at most, that Kassera was closely supervised and unfairly criticized. The Eighth Circuit has consistently held, however, that the feeling of being unfairly criticized would not cause a reasonable person to quit her job. *Tork v. St. Luke's Hosp.*, 181 F.3d 918, 919 (8th Cir. 1999); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159-60 (8th Cir. 1999). Although close supervision, criticism, and questioning of the type described by Kassera may render a work environment objectively *unpleasant*, it does not render the work environment objectively *intolerable*. Accordingly, no reasonable jury could find that Kassera was constructively discharged by District 11.

### C. Title VII Claims

Kassera contends that District 11 violated Title VII by retaliating against her for opposing discrimination by Champlin Park ESL teachers against minority students. For at least two reasons, Kassera cannot prevail on this claim.

First, Title VII prohibits employers from retaliating against an employee who has "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). Even if Kassera could establish that she opposed discrimination against minority students, she would be unable to recover under Title VII because such discrimination by a school

is not "an unlawful *employment* practice." *See id.; Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1183 (8th Cir. 1998) ("[O]pposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII."); *Evans v. Kans. City, Mo. Sch. Dist.*, 65 F.3d 98, 101 (8th Cir. 1995) (holding that a school principal's actions in complying with a desegregation decree "related to concerns about the school's responsibility to the student body and not to employment practices").

Second, although Kassera complained about how certain students were treated, she never complained that District 11 discriminated against them based on their race. A person who is a member of a racial minority may be treated poorly because she is a member of a racial minority, or she may be treated poorly because of the myriad reasons why anyone may be treated poorly. Federal law prohibits only the former. When asked whether she ever told anyone at District 11 that students were mistreated *because of their race*, Kassera replied: "I didn't say to them that it was because they were the minority, but when you look at the students, they were all of color." Kassera Dep. at 37. Further, in her email to Hall before she resigned, Kassera complained about how students were treated but made no mention of race discrimination. Harristhal Aff. Ex. S. Likewise, in the email that Kassera sent to Champlin Park's principal when she resigned, Kassera complained about the treatment of various ESL students and her own (non-minority) children, but again said nothing about any alleged race discrimination. Harristhal Aff. Ex. J. When asked at her deposition about this second email and her failure to mention race discrimination in it,

Kassera said: "I don't bring up race in general." Kassera Dep. at 182. Thus, by her own admission, Kassera did not complain of race discrimination.[4]

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion of defendant Independent School District No. 11 for summary judgment [Docket No. 18] is GRANTED.

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 15, 2008                    s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge

---

[4]Kassera's retaliation claim suffers a third problem: It is unlikely that a jury would find that Kassera suffered the requisite adverse action. To prevail on a retaliation claim under Title VII, an employee must establish that her employer took "materially adverse" action that might well have dissuaded a reasonable person from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Although this requirement is somewhat looser than the requirement of an "adverse employment action," the antiretaliation provision of Title VII does not create a cause of action for "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The supervision and criticism experienced by Kassera was likely not "materially adverse" because it likely would not have dissuaded a reasonable employee from opposing discrimination against students at Champlin Park.